**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| STEVE BROUGH,<br><br>Petitioner,<br><br>v.<br><br>ADMINISTRATIVE REVIEW BOARD;<br>U.S. DEPARTMENT OF LABOR,<br><br>Respondents,<br>_____<br><br>BNSF RAILWAY COMPANY,<br><br>Intervenor. | No.    19-71983<br><br>LABR No. ARB No. 2016-0089<br><br>MEMORANDUM* |
| BNSF RAILWAY COMPANY,<br><br>Petitioner,<br><br>v.<br><br>ADMINISTRATIVE REVIEW BOARD;<br>U.S. DEPARTMENT OF LABOR,<br><br>Respondents, | No.    20-70655<br><br>LABR No. ARB No. 2016-0089 |

_____

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

STEVE BROUGH,

Respondent-Intervenor.

On Petition for Review of an Order of the
Department of Labor

Argued and Submitted December 7, 2021
San Francisco, California

Before: LUCERO,[**] IKUTA, and VANDYKE, Circuit Judges.

This is a consolidated appeal from cross petitions for review of a final order

of the Administrative Review Board (ARB). BNSF Railway Company appeals the

ARB's ruling that it violated the Federal Railway Safety Act (FRSA), 49 U.S.C.

§ 20109(a)(4), by terminating Steven Brough due to his report of work-related

personal injury, and Brough appeals the ARB's determination that he was not

entitled to punitive damages. We have jurisdiction under 49 U.S.C. § 20109(d)(4),

and deny both petitions for review.

The decision of the Administrative Law Judge (ALJ) that Brough's report of

work-related personal injury was a contributing factor in BNSF's decision to

terminate Brough, as affirmed by the ARB, was supported by substantial evidence,

including the timing of BNSF's decision to terminate Brough after learning of his

[**]     The Honorable Carlos F. Lucero, United States Circuit Judge for the
U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

2

late injury report, BNSF's removal of Brough from his work station for refusing to sign a disciplinary report that did not require a signature, and BNSF's shift in its basis for disciplinary charges from Brough reporting his injury "too late" to "not reporting" the injury. A finding that the employer terminated an employee due, in whole or in part, to the employee's protected act establishes intentional discrimination for purposes of 49 U.S.C. § 20109(a), *see Frost v. BNSF Ry. Co.*, 914 F.3d 1189, 1195 (9th Cir. 2019), and an employee need not prove the employer had a subjective discriminatory animus, *id.* In context, *Frost*'s statement that "it would not be possible to show that an employer retaliated in response to an employee engaging in protected activity if the employer could demonstrate that it honestly believed no protected activity had occurred," *id.* at 1197, means that an employee's report of a workplace injury cannot be a contributing factor to a decision to terminate the employee if the employer does not know that an employee made such a report at all. Therefore, the ARB did not err in concluding that BNSF violated § 20109(a)(4).

Because Brough did not have to prove BNSF's subjective animus, the ALJ's findings (in its consideration of punitive damages) that there was no "intentional violation of the FRSA," and that BNSF decisionmakers "genuinely believed they were punishing unprotected misconduct and not attempting to directly punish

protected activity," do not undercut the ARB's conclusion that BNSF violated the FRSA. For the same reason, we reject BNSF's argument that it did not violate the FRSA because § 20109(a)(4) bars discrimination against an employee only when the employee has engaged in a "lawful, good faith act," and BNSF had a subjective reasonable belief that Brough's report of injury was not in good faith. Moreover, the ALJ found that Brough made his injury report in good faith, and that finding was not clearly erroneous.

Substantial evidence supports the ALJ's conclusion that BNSF did not prove its purported non-retaliatory reasons for terminating Brough by clear and convincing evidence. Therefore, the ARB did not err in holding that BNSF failed to establish its affirmative defense. Nor did the ARB erroneously rely on the "inextricably intertwined" legal theory, *see, e.g.*, *Yowell v. Fort Worth & Western Railroad*, 2020 WL 1151016 (ARB 2020), in determining whether Brough's protected conduct contributed to his termination. Rather, the ARB applied the correct causal standard, consistent with *Frost*. Although the ALJ referenced the incorrect standard, we review the ARB's decision, not the ALJ's, *see Maka v. I.N.S.*, 904 F.2d 1351, 1355 (9th Cir. 1990). Additionally, and contrary to BNSF's assertion, the ALJ did not rely heavily on her views about the fairness and wisdom of BNSF's policies in rejecting BNSF's affirmative defense. Rather, the ALJ

determined that BNSF's reporting rules and policies were unclear, in connection with rejecting BNSF's claim that it would have terminated Brough due to his failure to comply with the reporting rules.

The ARB did not err in holding that substantial evidence supported the ALJ's award of back pay to Brough for the time period from January 2, 2013 to June 2, 2014, because BNSF failed to carry its burden of adducing evidence that substantially equivalent jobs were available to Brough. *See Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995).

Finally, the ARB did not err in reversing the ALJ's punitive damage award.[1] The ALJ found that the BNSF managers "genuinely believed they were punishing unprotected misconduct," and the ARB concluded that BNSF "has made a good-faith effort to comply with the law." Although the ALJ found troubling evidence of indifference and callous disregard for the rights of workers, punitive damages liability does not arise where "the employer discriminates with the distinct belief that its discrimination is lawful," *Kolstad*, 527 U.S. at 537.

---

[1] We reject BNSF's argument that the ARB's reversal of the punitive damages award is unreviewable agency action. The FRSA has not precluded review of an award of punitive damages, *see* 49 U.S.C. § 20109(d)(4), and there are meaningful standards by which to determine whether an award of punitive damages is proper, *see, e.g.*, *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535–39 (1999).

5

Petitions **DENIED**.